**In the Matter of Robert and Margaret JONES, Debtors.**

**Bankruptcy No. 81–06737–W.**

United States Bankruptcy Court, E.D. Michigan, S.D.

June 29, 1983.

Stuart A. Gold, Southfield, Mich., for debtors.

Robert S. Hertzberg, Birmingham, Mich., for trustee.

Bruce N. Elliott, Ann Arbor, Mich., for Ann Arbor Trust Co.

## MEMORANDUM OPINION AND ORDER

GEORGE E. WOODS, Bankruptcy Judge.

This matter is before the Court on the objections of Ann Arbor Trust Company (Bank) and the trustee for the debtors, Robert and Margaret Jones, to the petition for turnover of assets filed by Robert Jones.

Robert and Margaret Jones constructed a personal residence on which Calvin C. Hoeft Building, Inc. (Hoeft) held a mechanic's lien. On April 30, 1980, pursuant to a judgment of foreclosure of the mechanic's lien, the sheriff of Washtenaw County struck off and sold the Jones' residence to Hoeft for the purchase price of $54,374.33.

The state statutory redemption period for the sale was to expire on November 29, 1981. On November 23, 1981, Robert and Margaret Jones filed a joint petition for relief under Chapter 11.

On January 31, 1982, Hoeft filed a complaint to lift the automatic stay. On February 9, 1982, the Court entered an order lifting the stay, evicting the debtors and

directing payment of the proceeds of the sale, minus liens and costs, to the trustee. The Court denied the debtors' motion for suspension of the running of the period of redemption and specifically terminated the redemption period.

On March 3, 1982, the bankruptcy proceeding was converted to a Chapter 7.

On May 5, 1982, Hoeft sold the property at issue to Mr. and Mrs. Ricci. On May 7, 1982, the Court entered an order confirming the payment of expenses and liens of sale and the turnover of the balance of the proceeds of the sale to the trustee. Approximately $100,000.00 was turned over to the trustee as a result of the sale.

Following conversion of the proceeding, the debtors filed a list of exempted properties. Margaret Jones elected the federal exemptions. Robert Jones elected the state exemptions, claiming the proceeds of the sale as entireties property pursuant to 11 U.S.C. § 522(b)(2)(B).

Robert Jones subsequently petitioned the Court to turn over the proceeds held by the trustee. The Bank and the trustee objected. The Bank holds an unsecured claim of approximately $26,000.00 against Robert Jones and an unsecured claim of approximately $28,000.00 against Margaret Jones, obtained as a result of money judgments. Additionally, the Bank holds a secured claim against Robert Jones in the amount of $1,200.00.

Section 522(b)(2)(B) provides in pertinent part:

(b) Notwithstanding § 541 of this title, an individual debtor may exempt from property of the estate either—

\* \* \* \* \* \*

(B) Any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent such interest as a tenancy by the entirety or joint tenant is exempt from process under

applicable non-bankruptcy law (Emphasis Added).

■ Under § 522(b)(2)(B), it is not the tenancy by the entirety itself which becomes a part of estate, but only the interest which the debtor held in such property immediately before the commencement of the case. *In Re Ford,* 3 B.R. 559 (Bkrtcy.D.Md. 1980), *aff'd sub nom., Greenblatt v. Ford,* 638 F.2d 14 (4th Cir.1981). Furthermore, such interest is exempt only to the extent it is immune from process under state law. *See, In Re Korff,* 14 B.R. 189 (Bkrtcy.E.D. Mich.1981).

■ Prior to April 30, 1980, Robert Jones held the property at issue as a tenant by the entirety. The nature of a debtor's interest in property held as a tenant by the entirety is determined by non-bankruptcy law. *Ford, supra.* The nature of the estate in Michigan has been summarized as follows:

An estate by entirety is sometimes regarded as a species of, or modified form of, joint tenancy, the modification being rendered necessary by the common-law theory that husband and wife are but one person. The unities of time, title, interest, and possession are common to both estates but in an estate by entirety there is an additional unity, namely, that of person. Strictly speaking, a tenancy by entirety is not a joint tenancy but is a sole tenancy, and, while the 2 estates resemble each other and possess some qualities in common, yet they differ both in form and substance and are distinguishable.

*Budwit v. Herr,* 339 Mich. 265, 272, 63 N.W.2d 841 (1954), *quoting* 41 C.J.S. at 457.

After April 30, 1980, Robert Jones held a statutory redemption right to regain the property lost through foreclosure and sale.[1] The controlling statute provided for a 15 month redemption period. Additionally, the statute required that lien foreclosure sales be conducted in the same manner as

---

1. A statutory redemption right refers to the debtor's right to regain property lost through foreclosure and sale. It must be distinguished

from "equity of redemption" which is the pre-foreclosure right to discharge indebtedness. 55 Am.Jur.2d, Mortgages § 900 at 780 (1971).

mortgage foreclosure sales.[2] The interests incident to a right of statutory redemption in a mortgage foreclosure proceeding have been set forth by Judge Graves:

> Under Michigan law, a purchaser at a foreclosure sale takes the property subject to the mortgagor's right of statutory redemption. *Ledyard v. Phillips,* 47 Mich. 305, 11 N.W. 170 (1882). The title thus conveyed to the purchaser is all the right, title and interest in the mortgaged premises which the mortgagor possessed when the mortgage was executed. *Stolte v. Krentel,* 271 Mich. 98, 260 N.W. 127 (1935). This title vests in the purchaser only upon the expiration of the statutory redemption period. *Bankers Trust Co. of Detroit v. Rose,* 322 Mich. 256, 33 N.W.2d 783 (1948). The mortgagor retains a significant amount of interest in the premises in addition to its statutory right of redemption; specifically, the mortgagor retains the right to possession and the right to rents and profits until the redemption period expires. *Heimerdinger v. Heimerdinger,* 299 Mich. 149, 299 N.W. 844 (1941). The purchaser at the foreclosure sale also has an interest to be protected. He is entitled to the expectation of full title upon the expiration of the redemption period.

*In Re James,* 20 B.R. 145, 148 (Bkrtcy.E.D. Mich.1982).

Following the February 9, 1982 termination of Robert Jones' statutory right of redemption, title in the property at issue vested in Hoeft, the purchaser at the foreclosure sale. Robert Jones retained an interest in the disposition of the surplus proceeds of the sale. However, the surplus was subject to attachment as if proceeding from an execution sale.[3]

Surplus money arising on an execution sale against entirety real estate has been held to constitute entirety property. Annotation, "Estate by Entirety in Personal Property," 64 A.L.R.2d 8, 60 (1959). In *Carlisle v. Parker,* 38 Del. 83, 188 A. 67 (1936), land owned by the entirety was jointly mortgaged. The mortgage was subsequently foreclosed, the balance paid, and the proceeds deposited with the Court. The First National Bank & Trust Company, which held a judgment against the husband, filed a petition with the Court to reach the funds. The Court held that the entirety character of the real estate extended to the surplus funds:

> We know of no rule of law which would destroy an estate by entireties in a surplus arising from a foreclosure of a mortgage on an entirety estate. Both parties are now living and every unity of person, of time and estate which ever existed exists now.

That the estate by entireties continues in the surplus fund arising from the sale has been determined by several cases. *Germania Savings Bank v. Jung,* 18 NYS 709 [(Sup.Ct.N.Y.)]; *Stretz v. Zolkoski,* 118 Misc 806 (195 NYS 46); *Servis v. Dorn,* 76 NJ Eq 241 (76 A 246).

The Michigan Supreme Court relied on *Carlisle* in *Muskegon Lumber and Fuel v. Johnson,* 338 Mich. 655, 62 N.W.2d 619 (1955), to hold that proceeds from the sale of entirety property, deposited in a bank account standing solely in the husband's name, were not subject to the payment of the husband's debts.[4]

More recent cases, however, have departed from the reasoning of *Carlisle* and its progeny. In *Fort Lee Savings and Loan Association v. Li Butti,* 55 N.J. 532, 264 A.2d 33 (1970), *revsg. on dissent* 106 N.J.Super. 211, 254 A.2d 804 (App.Div.1958), a majority of the New Jersey Appellate Division held that a judgment creditor of one tenant by the entirety was not entitled to payment of its judgment out of surplus funds held by the court after a mortgage foreclosure sale. The majority relied on past precedent, particularly *Servis v. Dorn,*

---

**2.** M.C.L.A. § 570.19 repealed by M.C.L.A. § 570.1121, eff. Jan. 1, 1982.

**3.** M.C.L.A. § 570.18 repealed by M.C.L.A. § 570.1121, eff. Jan. 1, 1982.

**4.** The evidence presented in *Muskegon Lumber* established that it was the intent of the parties that the funds be used jointly in the acquisition of other tenancy by the entirety property.

76 N.J.Eq. 241, 76 A. 246 (Ch.1909), cited with approval in *Carlisle*. Judge Carton, refusing to follow "gray-headed doctrines", dissented. Judge Carton reasoned:

> The estate by the entirety has been described as a "remnant of other times" which rests upon the "fiction of a oneness of husband and wife." [citation omitted]. The social purpose of the tenancy by the entirety seems to be to solidify the marital status by encouraging and protecting home ownership and to protect and insulate the institution of marriage from the onslaught of creditors. Upon death of one of the spouses, it assures the survivor, normally the wife, possession of a home free and clear of the individual indebtedness of the other.

> But whatever social purpose this tenancy was designed to serve in the interest of married parties and whatever the reasons for its continued existence in this State, there is no justifiable basis for extending it to the personal property which replaces it. To indulge in the further fiction necessary to achieve such a result serves no useful purpose and acts to frustrate justice. Furthermore, it runs counter to the policy of this State against recognizing the existence of tenancies by the entirety in personalty. [citations omitted].

> Nor can such a doctrine be justified on the theory that the survivorship rights of husband and wife continue because the surplus monies are the product of an involuntary conversion and thus become a substituted *res* standing in place of the property.

> \*      \*      \*      \*      \*      \*

> Mortgagors, in executing mortgages, must certainly be held to have understood both that they must pay the amount which the mortgage secures and that their interest in the property may be cut off by foreclosure and sale of the property in the event of a default. The foreclosure and sale are steps in a process entirely consensual in its origin and nature.

254 A.2d at 807. The New Jersey Supreme Court reversed the judgment of the Appellate Division for the reasons given in the dissenting opinion of Judge Carton.[5]

This Court also finds the reasoning of Judge Carton persuasive. The policy of Michigan is against recognizing the existence of tenancy by the entirety interests in personalty. *See,* 64 A.L.R.2d at 27 and cases cited therein. Additionally, the debtors in arranging for the construction of their home must have understood that their interests might be cut off by foreclosure and sale in the event of default.

■ Section 522(b)(2)(B) requires the Court to determine the nature of the debtors' interest in the property held as tenant by the entirety and the status of that interest under state law. At the commencement of the Chapter 11 proceeding, Robert Jones' interest in the property held as tenant by the entirety consisted of a statutory right to redeem.[6] That right expired on February 9, 1983 and the property was subsequently liquidated. It is the view of this Court that Robert Jones did not possess an interest in the property at issue which could be considered exempt from process under state law, following the termination of the statutory redemption period and the liquidation of the property. It is likewise the view of the Court that an unexercised statutory right to redeem does not constitute an "interest as a tenancy by the entirety . . . exempt from process under applicable non-bankruptcy law" pursuant to § 522(b)(2)(B). Accordingly, the petition of

---

**5.** *See also, Franklin Square National Bank v. Schiller,* 202 Misc. 576, 119 N.Y.S.2d 291 (1950); *In Re Loeber,* 12 B.R. 669 (Bkrtcy.D.N.J.1981).

**6.** At the commencement of the Chapter 7 proceeding, Robert Jones' interest in the property consisted of an interest in the proceeds of the foreclosure sale.

Although the Court need not reach the issue in the present case, it is noted that authority exists for the proposition that a debtor may only claim as exempt that property in which he had an interest at the time of conversion. *See e.g., In Re Stinson,* 27 B.R. 18 (Bkrtcy.D.Ore.1982).

Robert Jones for the turnover of assets is DENIED.

So ordered.