STOLTE v. KRENTEL.

1. EASEMENTS—RIGHT OF WAY—DESCRIPTION—DEFINITENESS.
   A right of way that is too indefinite for a determinate de-
   scription cannot be established and protected by a court of
   chancery.

2. EQUITY—PLEADING—DECREES.
   Complainant in equity must so state his case in his bill that if
   admitted by answer or proved at the hearing, the court can
   decree upon it.

3. BOUNDARIES—EASEMENTS—MONUMENTS CONTROL COURSES, DIS-
   TANCES AND QUANTITIES—DRIVEWAY TO GARAGE BASEMENT.
   The rule that monuments control applies where the purpose of
   the parties is to provide driveway from street to basement of
   garage over 80 feet therefrom and agreement therefor states
   proper course but grants right of way for only 41 feet from
   street for duration of mortgagee's interest.

4. REFORMATION OF INSTRUMENTS—MUTUAL MISTAKE.
   For relief by reformation in equity it is essential that error be
   made by both parties and that it be admitted by defendant or
   distinctly proven.

5. MORTGAGES—FORECLOSURE SALE—CAVEAT EMPTOR.
   The doctrine of caveat emptor applies to a foreclosure sale under
   a decree of court.

6. SAME—FORECLOSURE SALE—TITLE CONVEYED.
   The title conveyed by foreclosure sale in equity is all the right,
   title and interest in and to the mortgaged premises which the
   mortgagor possessed at the time the mortgage was executed
   or which was subsequently acquired by him.

7. SAME—DEFECTIVE AGREEMENT AS TO EASEMENT—REFORMATION.
   Mortgagee who bid in property on foreclosure sale stands in
   shoes of mortgagor as to reformation of defective agreement
   as to easement for driveway along the side of property which
   agreement was executed and recorded prior to execution of
   mortgage.

8. APPEAL AND ERROR—ESTOPPEL—PLEADING.

An estoppel which was not pleaded in defense to bill to foreclose mortgage and reform agreement as to easement will not be considered on appeal (Court Rule No. 23, § 3 [1933]).

9. MORTGAGES—EQUITY—FORECLOSURE—SALE IN LUMP OR PARCELS—DISCRETION OF COURT.

Sale on foreclosure in equity may be made in the lump or in parcels, as the trial judge may think most likely to bring the highest price.

10. SAME—SALE IN LUMP OR PARCELS—DESCRIPTION.

Decree of foreclosure ordering sale of premises as one parcel where it was one contiguous and adjacent parcel of land *held*, correct where there were no separate or distinct lots or parcels included in description foreclosed.

Appeal from Ingham; Collingwood (Charles B.), J. Submitted January 23, 1935. (Docket No. 86, Calendar No. 38,191.) Decided April 8, 1935.

Bill by Fannie N. Stolte against Flossie I. Krentel and others to foreclose a mortgage and reform agreement as to driveway. Decree for plaintiff. Defendant Michigan Trust Company appeals. Affirmed.

*C. F.* and *E. T. Hammond,* for plaintiff.

*Joseph H. Dunnebacke* and *Leslie B. Butler,* for defendant Michigan Trust Company.

BUSHNELL, J. In a bill to foreclose mortgages covering parts of lots 1, 2, 3 and 4 of block 196 in the city of Lansing, plaintiff Stolte also prays for reformation of a driveway agreement which was executed contemporaneously with the release hereinafter described. In 1924 Alex C. Krentel, the owner of the fee, secured a release of part of the mortgaged premises and erected a building, herein-

after called the "new garage," at the southwest corner of Washington avenue and Hazel street, part of which is on the land originally included in the mortgage. The description of the land so occupied is:

"Beginning 41 feet south of the northeast corner of lot 1, block 196, thence south 47½ feet, thence west 79 feet, thence north 5 feet, thence west 11 feet, thence north 42½ feet and thence east to the place of beginning."

The remainder of the lands incumbered by the mortgage may be described as:

"Commencing at a point on Washington avenue 88½ feet south of the corner of Hazel street, thence west 79 feet, thence north 5 feet, thence west 11 feet, thence north 42½ feet, thence west to Grand River, thence south along Grand River 107½ feet, thence east to Washington avenue, thence north 60 feet to place of beginning."

The easterly portion of the last described property was then, and is now, occupied by a building fronting on Washington avenue which is also used for garage and storage purposes, and which we will hereafter refer to as the "old garage." Access to the ground floor is from Washington avenue on the east but the basement can only be reached from Hazel street on the north.

Krentel thereafter gave the Michigan Trust Company, defendant herein, a mortgage on the property first described and the north 41 feet of lot 1 and east 20 feet of lot 2, which property is bounded on the north by Hazel street, on the east by Washington avenue, on the south by the property involved in the instant case, and on the west by the property of one Henning, who is not a party to this action.

The Michigan Trust Company foreclosed its mortgage and in 1932 bid in the property covered by such mortgage.

Access to the basement of the "old garage" is had through a door of sufficient size to admit automobiles, which door is in the north wall some 30 feet west of the "new garage." The driveway agreement, after describing the mortgaged premises, provided:

"And whereas said second party has certain mortgage rights covering the above described lands and adjoining lands and whereas, said second party has this day released adjoining lands, which lands provide access on the north to the buildings on the premises above described, and it is agreeable to the parties that another right of way be granted from the north to premises first above described.

"Therefore, for a valuable consideration the said first parties do hereby grant to said second party an easement or right of way for driveway purposes during such time as the said second party may hold her mortgage interest on said lands above described over lands described as follows: the west 4 feet of the east 20 feet of the north 41 feet of lot 2, block 196, city of Lansing, Michigan, is to be used with the east 4 feet of the land adjoining on the west."

This way, as so described, failed to reach the "old garage" by 42½ feet but this was unimportant so long as no one objected to the use of the land hereinafter described in a quotation from the opinion of the trial court.

Defendant Michigan Trust Company appeals from the decree, which corrected the description of driveway agreement, and raises the following questions:

1. The bill fails to describe the easement it seeks to impose.

2. The court was in error in finding a mutual mistake in the original driveway agreement.

3. That while relief might be granted as against Krentel it may not be given against a subsequent owner.

4. Plaintiff is estopped.

5. The decree should have directed a sale in parcels.

The legal yardstick is found in *Fox* v. *Pierce,* 50 Mich. 500:

"Now a right of way which is too indefinite for a determinate description is too indefinite to be established and protected by the court of chancery. Assuming that the right which is actually in controversy, or rather the right which complainants contemplate, to be capable of such a description, the rule then applies that the complainant must so state his case that if admitted by answer, or proved at the hearing, the court can decree upon it. Has that been done? Are the means given to enable the court to declare in its paper decree exactly what right of passage exists, and of what shape and dimensions the place is, and precisely where it is located with reference to lot lines and permanent erections?"

In the case at bar the termini of the driveway are clear: Hazel street on the north and the "old garage" (the only property to be benefited) on the south. These points became such monuments as would control courses and distances. The purpose of the parties being inconsistent with the distance of 41 feet south in the agreement, both cannot stand and the rule that monuments control must apply. In *County of St. Clair* v. *Lovingston,* 23 Wall. (90 U. S.) 46, Mr. Justice Swayne said:

"It is a universal rule that course and distance yield to natural and ascertained objects. A call for

a natural object, as a river, a spring, or even a marked line, will control both course and distance.''

Practically the same language is used by Mr. Justice CHAMPLIN in *Turner* v. *Holland,* 65 Mich. 453, and in *Gilman* v. *Riopelle,* 18 Mich. 145, 164, 165, Mr. Justice COOLEY said:

''Inasmuch as definite and permanent boundaries are given, the deed must be held to convey all the land within those boundaries, notwithstanding the quantity is much greater than that mentioned. This is on the familiar principle that the incorrect portion of the description is to be rejected where that which remains is sufficient, and that definite and permanent monuments are to control distance and quantity.''

In *Bauman* v. *Barendregt,* 251 Mich. 67, Mr. Justice FEAD wrote:

''If distances in the description control, defendant's title runs out into the lake. However, he does not controvert plaintiffs' contention that courses and distances yield to natural and ascertained objects, like the shore of the lake. *Brown* v. *Milliman,* 119 Mich. 606; *Turner* v. *Angus,* 145 Mich. 679.''

We held in *Miles* v. *Shreve,* 179 Mich. 671:

''It is elementary that the burden of proof is strongly upon the party asking reformation of a written instrument on the ground of mistake. The proof of mistake must be clear and convincing. * * *

''The mistake must be mutual. For relief by reformation in equity, it is essential that the error be made by both parties, and that it be admitted by defendant or distinctly proven.''

Also, in *Lee State Bank* v. *McElheny,* 227 Mich. 322, it was said:

"Courts do not make contracts for parties, and this truism has given rise to the cautionary rule requiring clear and satisfactory evidence of a mutual mistake before reforming a written instrument."

See, also, *Moss* v. *Van Wagnen*, 249 Mich. 218.

The proof in such cases "will be weighed with much care and, when considered with any facts or circumstances tending to show its unreliability, must be such as satisfies the mind and conscience of the court." *Hiles* v. *First National Bank at Flint*, 237 Mich. 278.

Alex Krentel is deceased and Fannie Stolte's lips are sealed (3 Comp. Laws 1929, § 14219), so we must seek light elsewhere. An examination of the language of the agreement, the exhibits and such admissible testimony as was produced, indicates that which is stated by the trial judge:

"This court is convinced that it was the intention of defendant Krentel to make some provision so that plaintiff might have access to the basement of the garage in question.

"The evidence does not show that a way existed commencing at a point described in the agreement as the starting point of the easement described, and running directly south from Hazel street to the old garage.

"The testimony shows that in the basement of the old garage there is a double door through which automobiles could be driven. This door is situated some 30 feet west of the defendant trust company's building, and would not be in line with the easement described in the agreement if the same were extended.

"This door indicates that before the new garage was built a way was had from the old garage to Hazel street across some of the property then owned and controlled by defendant Krentel. * * *

"All the evidence indicates that Alex C. Krentel, one of the defendants, sought to secure from Fannie N. Stolte, the plaintiff, a release of certain portions of her mortgaged property in order that he might build a second garage north of the old garage, and facing Washington avenue. As part of the consideration for this release Krentel gave plaintiff the agreement for a right of way. The agreement clearly shows that Krentel recognized that the new building when completed would close one of the means of access to and from the old garage. * * *

"Following this description the right of way would stop at the beginning of the property released by Fannie N. Stolte and 42½ feet from the 'premises above described.'

"In the opinion of this court it is obvious that something was omitted from this agreement. Otherwise the easement would not fulfill the intention of the parties.

"In order to accomplish the evident purpose of the defendant the following words should, in the opinion of this court, be supplied and inserted:

" 'Also the west 8 feet of the east 24 feet of the south 42½ feet of the north 83½ feet of lot 2, block 196, of the city of Lansing.' "

It is a well settled rule that the doctrine of *caveat emptor* applies to foreclosure sales under a decree of court. *Janower* v. *F. M. Sibley Lumber Co.,* 245 Mich. 571. See, also, 19 R. C. L. p. 622, § 439. The title conveyed by foreclosure sale is all the right, title and interest in and to the mortgaged premises which the mortgagor possessed at the time the mortgage was executed, or which was subsequently acquired by him. *North Dakota Horse & Cattle Co.* v. *Serumgard,* 17 N. D. 466 (117 N. W. 453, 138 Am. St. Rep. 717, 29 L. R. A. [N. S.] 508). The purchaser must examine the title, and if he buys without an examination, it is at his own peril and he

must suffer the loss occasioned by his own neglect. Defendant trust company stands in the shoes of Krentel, and as the agreement could have been reformed as against him, it may also be reformed as against it. In the *Janower Case, supra,* the court ruled:

"The petitioner, purchaser, took (35 C. J. p. 75) 'subject to defects, liens, and incumbrances of which he has notice or of which he could obtain knowledge under his duty to inform himself.' "

Applying this test to the defendant's proposition, the strained language of the driveway agreement should have been noticed and proper inquiries should have been made.

Defendant relies upon an estoppel which it does not plead. *Saginaw Suburban R. Co.* v. *Connelly,* 146 Mich. 395; *Dean* v. *Crall,* 98 Mich. 591 (39 Am. St. Rep. 571), and Michigan Court Rule No. 23, § 3 (1933). Therefore, it will not be considered.

"It is undoubtedly true that the policy of our statutes is that forced sales of land under execution, and statutory sales, and perhaps in all cases where time is given for redemption, the sale should be made in parcels. How. Stat. §§ 6116, 8503. And in very many cases it would be highly proper to do so on foreclosure sales in equity; but in the latter case it is left to the discretion of the court to direct what course shall be pursued upon this subject. In statutory foreclosures the requirement is express, but in foreclosures in equity the statute is silent; there is no redemption in the latter case. Equity always directs sales in such manner and quantities as will secure the highest price." *Macomb* v. *Prentis,* 57 Mich. 225 (L. R. A. 1917 B, 518 note, also 529 note).

The trial court correctly decreed a sale of the premises as one parcel for the reason that the de-

scription foreclosed was one contiguous and adjacent parcel of land. There were no separate or distinct lots or parcels included in the description.

The decree is affirmed, with costs to appellee.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.