Anthony P. DiGIACOMO and Ann M. DiGiacomo, his wife, Petitioners,

v.

UNITED STATES of America, Respondent.

Civ. A. No. 4413.

United States District Court, D. Delaware.

Aug. 10, 1972.

Bernard Balick, Aerenson, Balick & Balick, Wilmington, Del., for petitioners.

Norman Levine, U. S. Atty., and Richard D. Levin, Asst. U. S. Atty., D. Del., for respondent.

## OPINION

LAYTON, District Judge.

The United States, by Complaint filed on July 19, 1972, has seized certain real property of Anthony DiGiacomo and his wife in Wilmington, Delaware.[1] The seizure was made pursuant to Title 18 U.S.C. § 1955(d) and certain procedures authorized for seizures in matters relating to forfeitures under the customs laws and in the case of property with a value in excess of $2,500 in accordance with seizures and sales of property, such as vessels, under the practice in admiralty.

> "(d) Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States. All provisions of law relating to the seizure, summary, and judicial forfeiture procedures, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from such sale; the remission or mitigation of such forfeitures; and

the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred or alleged to have been incurred under the provisions of this section, insofar as applicable and not inconsistent with such provisions."

The complaint shows that the seizure of the real property in question was based upon alleged violations by defendant, Anthony DiGiacomo, of gambling laws and that he has been arrested and indicted for such offense, although no trial has been held.

Pursuant to the aforesaid statutes and regulations[2] governing seizures and forfeitures of personal property for violation of the United States Customs laws, the United States Marshal has seized the premises, posted a forfeiture notice on the door, and the Court is advised that petitioner, DiGiacomo, has been dispossessed not only of the use of the downstairs portion of the premises where he conducts his alleged (but not proved) gambling business but also his son and daughter-in-law, who lease and live in the upstairs portion of the premises, have been evicted therefrom.

The United States having taken no action for in excess of two months since the seizure of petitioners' premises, petitioners have filed an application for a restraining order, temporary injunction and permanent injunction enjoining the United States from denying to petitioners the use and control of the premises.

As far as can be ascertained this is a case of first instance and because of the government's alleged wrongful interference with the owners' possessions, this

---

1. U. S. v. 625 North Lincoln Street, Civil Action 4421.

2. Even when the value of the thing forfeited is less than $2,500, the procedures are so complicated as to have recently caused the Third Circuit Court in Menkarell v. Bureau of Narcotics, 463 F.2d 88, June 20, 1972, to observe "An experienced tracker through the wilderness of these confusing references and cross references will eventually determine. . . ."

Where the value exceeds $2,500 the procedures resemble even more of a hare and hounds game. In such event the matter is referred to the United States Attorney who may, and in this case did, proceed to file a complaint in forfeiture in accordance with Title 19 U.S.C. § 1610 et seq and 28 C.F.R. Part 9(a). Since petitioners do not challenge the method adopted by the government in seizing their property, nothing more need be said in this connection.

question should be decided without delay.

Petitioners base their application upon three grounds, viz. (1) that a hearing on their application for a remission would disclose their innocence of any participation in the crime charged thus entitling them to the return of their real property. This theory seems somewhat misplaced because by the time a remission hearing could be held and decided the property would have been long since sold leaving nothing but the proceeds of the sale to litigate over.

Secondly, petitioners say seizures and forfeitures such as these, without notice of, and the right to, a hearing are violative of the petitioners' Fifth Amendment rights. While I cannot accept this contention, the argument has much merit. Forfeitures, although said to be in the public policy, are a harsh and violent procedure, at least until now sanctioning the seizure and sale of property without any notice of, or the right to, a prior hearing. It is based upon the almost medieval theory of Deodant [3]—the thing or rem is guilty of the act—and incidentally does not even pay lip service to the principle of presumption of innocence.[4] It results frequently that the only remedy is a long drawn out and often unsuccessful application for remission. It has been criticized in at least two Supreme Court decisions [5] but in neither was it found unconstitutional. Nevertheless, in my opinion, this exceptional procedure is beginning to run a collision course with a number of recent Supreme Court cases [6] and hopefully in the near

future will be fully reexamined by that Court. However, as of this writing, the forfeiture remedy is still sanctioned by the most recent cases. United States v. One 1967 Ford Mustang, 457 F.2d 931, 9th Cir. March 21, 1972.

Petitioners' third argument, and in my judgment a sound one, is that section 1955(d) never intended the seizure and forfeiture of real property. The government points to the language of the Act "any property" and with superficial plausibility says this must include all sorts of property, personal and real, but there are too many signs to the contrary to convince me.

■ Whether the words "any property" as used in section 1955(d) in fact include real property presents a serious question of statutory interpretation. Even conceding, as I do, that the rule of reasonable, rather than strict, construction is applicable here, United States v. Stowell, 133 U.S. 1, 12, 10 S.Ct. 244, 33 L.Ed. 555, it is doubtful that the Congress intended to include real property within the purview of section 1955(d). The legislative history underlying the Act throws no light on the matter.

However, if Congress had intended to include real property in the forfeiture provisions it could easily have said so. It did not. Secondly, forfeiture proceedings are governed by the procedures prescribed for seizures under the customs laws and, in the case of property whose value exceeds $5,000, for the sale of vessels under admiralty procedures. Such property is always personal, not real.[7]

---

3. United States v. United States Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971).

4. Not being a criminal action petitioners are not entitled to such presumption, but the fact remains that seizures and forfeitures grow out of criminal offenses and property of alleged criminals may be seized, forfeited and sold even prior to their trial.

5. J. W. Goldsmith Jr.-Grant Co. v. United States, 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376; United States v. United States Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434.

6. Among others, Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Swarb v. Lennox, 314 F.Supp. 1091 (E.D.Pa. 1970); and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (June 12, 1972).

7. For instance in 28 C.F.R. Part 9.6 we see language to the effect that if the property seized can be more advantageously sold in another district, then "the property shall be moved to and sold in such other district". This obviously relates to personal property.

Thirdly, and very importantly, the only instance where forfeitures of real property have ever been attempted and sanctioned, is under statutes expressly authorizing the forfeiture of *real property*. See *Stowell* and statutes therein cited. And fourth, despite the argument by the government that the procedures for forfeitures under the Customs or condemnation laws and regulations are particularly appropriate for the seizure and forfeiture of real property, there are substantial reservations in my mind. It is relatively easy to seize and forfeit articles of personal property which are the subject of Customs seizures. But the problem of disposing of various interests in real property presents many complications.

For example, Mr. and Mrs. DiGiacomo own the realty in this case as tenants by the entireties. In Delaware, this sort of an estate can only be held by a man and woman while married. Each owns the whole while living and neither can sell his interest except with the consent of the other. At the death of one the survivor continues to own the whole. There can be no partition between them while both live, and creditors of one cannot by execution reach the interest of the other in such property.[8] This forfeiture proceeding, although against the land, nevertheless involves complicated property questions. True, affidavits charge both Mr. and Mrs. DiGiacomo with guilty knowledge and participation in the crimes charged. Theoretically then, if both are guilty, the forfeiture would, according to the government, result in combining and forfeiting both the interest of the husband and the wife. But suppose after a forfeiture sale Mrs. DiGiacomo successfully proved her innocence and right to a remission. There would be no way of valuing and partitioning the proceeds of the sale be-

tween the United States and Mrs. DiGiacomo. Carlisle v. Parker, 8 W.W. Harr. 83, 188 A. 67 (Del.Super.1936). Other complications might also arise in the forfeiture of jointly owned realty. Examples such as this may be cited to question the intent of Congress as meaning to include realty within the scope of the language "any property".[9]

 For the reasons above stated, I conclude a reasonable interpretation of the language "any property" contained in section 1955(d) is that real property was not intended to be the subject of this type of a forfeiture.

Petitioners' application for a temporary and final injunction is granted. The petitioners will be restored to the full right to possession of their property.

Please submit order.

---

8. Hurd v. Hughes, 12 Del.Ch. 188, 109 A. 418.

9. Moreover, although not necessary to decide here, there would be at least some merit to the contention that because of

the right of either tenant by the entireties to file a petition for remission with the possible result that either or both might be successful, the government has no right to seize or forfeit the property involved in this proceeding.